27353. STATE HIGHWAY BOARD *v.* BRIDGES.

DECIDED JULY 1, 1939.

*Wright & Covington,* for plaintiff.
*Lanham & Parker,* for defendant.

MacIntyre, J. The State Highway Board instituted against Miss Ruth Bridges a proceeding to condemn a strip of land across the front of her property and along the side of an old highway, the amount of land to be taken across the frontage of 461 feet being fourteen one-hundredths of one acre with shade trees thereon. The plaintiff in error contends that on the trial the judge erred in the charge to the jury, by stating that the measure of recovery for the part of the land actually taken was its "fair and reasonable value," and failed to limit the recovery to the reasonable "market value."

The constitution of Georgia provides (Code, § 2-301) : "In cases of necessity, private ways may be granted upon just compensation being first paid by the applicant. Private property shall not be taken, or damaged, for public purposes, without just and adequate compensation being first paid." Referring to lands taken under eminent domain, the Code, § 36-504, declares: "The assessors, or a majority of them, shall assess the *value* of the property taken or used, or damage done, and shall also assess the consequential damages to the property not taken, and deduct from such consequential damages the consequential benefits to be derived by the owner from the operation of its franchise by the corporation, or by the carrying on of the business of the corporation or person taking or damaging the property: Provided, the consequential benefits assessed shall in no case exceed the consequential damages assessed: Provided further, that nothing in this section shall be so construed as to deprive the owner of the *actual value* of his property so taken or used." (Italics ours.) Thus we have this statute referring to the "value" of the property taken, not "market value," and the constitution of our State saying that just and adequate compensation shall be paid. The constitution does not say that the "market value" of the property taken shall be paid. On the other hand, the statute says that nothing in this section shall be so construed as to deprive the owner of the "actual value" of his property so taken. It does not say the "market value." The statute here is applying the word "value" to the property in an eminent-domain proceeding, and expressly qualifies it only by the word "actual." Generally speaking, the measure of damages for the property taken would be its market value, for its "market value would coincide with its actual value." It is sometimes the case that there would be little opportunity of selling in the market, as an isolated parcel

of land, the little strip of land taken, although its taking might materially lessen the value of the land remaining. The "value" of land taken in a proceeding of this kind against a small strip of land embraces not necessarily the "value" of the strip of land taken as an isolated parcel of land, but such additional "value" as attaches to it by reason of its connection with the adjacent land of the same owner. Scott v. St. Paul &c. Ry. Co., 21 Minn. 322; Dean v. County Board of Education, 210 Ala. 256 (97 So. 741).

So we think this statute, in using the word "value" when referring to part of the land here taken, would, under the circumstances at least, be better understood by the jury when qualified by the words as used by the judge, "fair and reasonable value," than if qualified by "market value." We think it would more likely convey to the minds of the jury the idea that the value meant was the real value in contradistinction to theoretical value. Jurors might be prone to apply the definition of "market value" as "the price property itself will command in the market" (3 Bouvier's Law Dictionary, 3387), and apply it to the strip of land as an isolated strip, and not consider it as enhancing the value of the residue of the land. Baker v. Arlington, 271 Mass. 415 (171 N. E. 462). Generally speaking, "value" as used in reference to lands taken under eminent domain is a relative term depending on the circumstances. Thus, under some circumstances, the "value" might be the actual value, the market value, the salable value, the reasonable value and the cash value. Black's Law Dictionary (3d ed.), 1799; 3 Bouvier's Law Dictionary, 3387. Relatively to a little narrow strip on the front of the property which is actually taken, as is involved in this case, where there would have been little opportunity of selling it in the market as an isolated strip, would it not be fully as accurate and effective, in conveying the intent of the statute in describing "value" as used in the Code, § 36-504, even though under the facts of this case the market value coincided with the just and reasonable value, to say that it means "just and reasonable value," which is here in effect "actual value," as it would to say it means "market value"? We think so. Wood v. Syracuse School Dist., 108 Kan. 1 (193 Pac. 1050); Lawrence v. Boston, 19 Mass. 126. The jury were to determine in this case, first, the "value" of the property actually taken by the highway department; second, the damage, if any, in excess of the bene-

fits, to the remainder of the adjacent property owned by the defendant; and the two added together would be the amount of the total recovery.

The judge in effect charged that in determining or estimating the damages in this case the jury should take into consideration first, the "actual value," or the fair and reasonable value of the strip of land sought to be condemned by the plaintiff; and second, the benefits or improvements, if any, and the damages (disadvantages), if any, resulting to the remainder of the land not taken by the plaintiff, from the appropriation by the plaintiff of the strip of land in question for the purpose of its highway; that the benefits to be considered and allowed by the jury are the direct and peculiar benefits, if any, which result to the remainder of the land not appropriated by the plaintiff; not the general benefits which the defendant derives, in common with other landowners in the vicinity, from the building of the road; neither should the jury, in estimating the damages in this case, take into consideration such inconveniences and disadvantages (damages) to the defendant as are consequences of the lawful and proper use of the road, in so far as the same are common to other landowners in the neighborhood, portions of whose lands are not taken; and then qualified the recovery of the damage to the property not taken; and then explained to the jury in detail that under the statute the excess, if any, of the consequential damages to the (adjacent) land not taken over improvements or benefits may be recovered, but the excess of benefits to the land not taken over consequential damages can not be recovered, in view of the fact that the statute so states. The charge was not reversible error because, as contended by the plaintiff in error, "the sole test to be applied is the market value of the land not taken, before the strip is taken and the improvements done, and the market value of the remainder of the land after the strip of land is taken off and the improvements made. If the market value is less, there is a damage. If the market value is greater, there is a benefit. The court utterly failed to instruct the jury upon this question or to give the jury any measure by which they could determine whether or not the land had been benefited or damaged." We can not agree that this is *the sole* test; but, generally speaking, the writer prefers this test as being "clean cut" and not complicated. We think the simplest and most satis-

factory rule for the ascertainment of damages in a case like this, and the one which would probably be most easily understood by the jury from the court's charge, would be, first, that the measure of damages for the part of the lot actually taken by the highway department is the difference between the "market value" of the whole lot just before the taking and the "market value" of the whole lot immediately after taking; and, second, that the measure of consequential damages, if any, for the part of the lot not taken, where there are either benefits or damages involved, or both, is the difference between the "market value" of the land not taken *before* the strip is taken off and the improvements (benefits) made and the "market value" of the remainder of the land *after* the strip of land is taken off and improvements made; that is, if the "market value" of the residue before the improvements is equal to or less than the "market value" of the residue after the improvements, there can be no recovery for consequential damages to the residue. But if the "market value" of the residue before the improvements is greater than the "market value" of the residue after the improvements, there should be a recovery, and the amount thereof is the difference between the "market value" of the residue before and after taking. Nevertheless the owner of the land actually taken is entitled, irrespective of any damages to the residue, to the actual value of the land taken.

The judge's instruction in this case as to the method of arriving at the damages, if any, in the absence of a request to charge, was not reversible error. He dealt with the question by instructing the jury first to ascertain the fair and reasonable value of the little strip of land actually taken; second, to ascertain the damage, if any, to the part of the land not taken; and the two added together would constitute the whole damage. He was careful to instruct them that in any event the plaintiff would be entitled to recover the fair and reasonable value of the property actually taken; and relatively to the residue of the property, he instructed them at some length that if the benefits or improvements exceeded the consequential damages to the property not taken there could be no recovery of consequential damages; but that if the consequential damages to the property not taken exceeded the benefits or improvements then there was damage which would be recoverable, the measure of which is "the difference between the conse-

quential damages and consequential benefits, in the event you should find the damages flowed in consequence of the change in grade and the building of said road, and that those consequential damages exceeded the amount of consequential benefits;" and that if they found both actual and consequential damages, they should add them together and return their verdict in one lump sum. The use by the jury of either method in determining the damage would theoretically bring about the same result.

The part of the charge complained of in ground 8, which stated all of Code, § 38-107, except it omitted the words, "the nature of the facts to which they testified, and the probability or improbability of their testimony," is excepted to on the ground that the court had undertaken to charge this Code section fully and completely, and that the omission of the language above quoted was erroneous. "This court and the Supreme Court have held that where the judge undertakes to give in charge the provisions of this section, it is his 'duty to instruct the jury fully and completely with respect thereto, and not merely to charge certain portions of that section.' *Gossett* v. *Wilder*, 46 *Ga. App.* 651 (168 S. E. 903); *Shankle* v. *Crowder*, 174 *Ga.* 399 (163 S. E. 180). . . . Yet it has many times been held that although a particular principle of law may not be given in charge to the jury in express terms, if the language of the charge when considered as a whole is sufficient to convey the meaning and application of such principle, the omission is thereby sufficiently cured." *Travelers Insurance Co.* v. *Anderson*, 53 *Ga. App.* 1 (184 S. E. 813). In this case (after first charging as to the burden of proof, and defining preponderance of evidence) the judge instructed the jury: "In determining where the preponderance of the evidence lies, the jury may consider all the facts and circumstances of the case, the witnesses' manner of testifying, their intelligence, their means and opportunity for knowing the facts to which they testify, and also their personal credibility so far as the same may legitimately appear from the trial of the case. The jury may also consider the number of witnesses, though preponderance is not necessarily with the greater number. If upon consideration of the evidence in this case you find there is a conflict in the testimony, it is your duty to reconcile that conflict, if you can do so, so as to make the whole speak the truth; but if you can not reconcile such conflicting tes-

timony, it then becomes your duty to believe that witness or those witnesses whom you think most entitled to credit and belief, you being the exclusive judges of the credibility of the witnesses, that is, what weight and credit you may give to the testimony of each and every witness. . . You will look to the evidence, gentlemen, and see what the truth is as to that, and as a matter of reason and common sense, and jurors wanting to do right in the case, without prejudice or favor towards any one, but as impartial and upright jurors seeking the truth, find a verdict which you believe will speak the truth." An omission to charge the jury in the express language, "the nature of the facts to which they testified, and the probability or improbability of their testimony," was sufficiently cured by the language of the charge as a whole. Even if that were not so, the only real issue in the case was the value of the land condemned, and there were witnesses for both sides, giving contradictory testimony as to this issue, and by consent the jury was allowed to go and look over the land sought to be condemned; and if it was error to omit these two subjects, it was as much error against one of the parties as the other, and we do not think the error was harmful to the owner of the property. *George* v. *McCurdy,* 42 *Ga. App.* 614, 617 (157 S. E. 219) ; *City Ice Delivery Co.* v. *Turley,* 44 *Ga. App.* 32, 39 (160 S. E. 517). The other exceptions to the charge do not disclose reversible error.

The plaintiff in error cites, on the question of the judge's charge on the measure of damages, *Central Georgia Power Co.* v. *Mays,* 137 *Ga.* 120 (3) (72 S. E. 900) ; *State Highway Board* v. *Shierling,* 51 *Ga. App.* 935; *Southern Railway Co.* v. *O'Bryan,* 112 *Ga.* 127 (37 S. E. 161) ; *City of Macon* v. *Douglas,* 45 *Ga. App.* 798; *City of Barnesville* v. *Parham,* 44 *Ga. App.* 151 (160 S. E. 879) ; *City of Atlanta* v. *Atlas Realty Co.,* 17 *Ga. App.* 426 (87 S. E. 698) ; *Flemister* v. *Central Georgia Power Čo.,* 140 *Ga.* 511 (10) (79 S. E. 148). The defendant in error cites *Elbert County* v. *Brown,* 16 *Ga. App.* 834 (86 S. E. 651) ; *Central Georgia Power Co.* v. *Preston,* 137 *Ga.* 347 (73 S. E. 505) ; *Georgia Power Co.* v. *Chapman,* 46 *Ga. App.* 582 (168 S. E. 131) ; *Cincinnati & Georgia Railroad* v. *Mims,* 71 *Ga.* 240, 244.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*